# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HACKWORTH, | CASE NO. 1:06-cv-00850-AWI-MJS (PC) |
| Plaintiff, | FINDING AND RECOMMENDATION RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| P. RANGEL, | (ECF No. 58) |
| Defendant. | OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.   PROCEDURAL HISTORY**

Plaintiff Robert Hackworth ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's August 16, 2007 First Amended Complaint.

In its Screening Order filed on November 10, 2008, the Court found that Plaintiff had stated a cognizable claim for excessive force against Defendant Rangel.

Pending before the Court is Defendant's Motion for Summary Judgment filed September 10, 2010. (ECF No. 58.) Plaintiff filed his Opposition on December 6, 2010.

1

(ECF No. 65.)  Defendant replied and Plaintiff filed a Surreply.  (ECF Nos. 66 & 71.)

## II. BACKGROUND

The facts, viewed in the light most favorable to Plaintiff, are as follows:  On July 28, 2004, Defendant Rangel refused to exchange Plaintiff's bed sheet for a new sheet because it was torn.  A verbal confrontation ensued between the two.  Plaintiff's hand was in his open food port when Defendant kicked the food port's door, catching and breaking one of Plaintiff's fingers.

In response to the incident, Plaintiff was given a rules violation report ("RVR") initially charging him with attempted battery.[1]  (ECF No. 58-7 p. 2; Def.'s Motion for Summary Judgment Ex. A.[2])  A disciplinary hearing was held on November 28, 2004 and reconvened on December 12, 2004 to allow an investigative employee additional time to conduct interviews.  At the conclusion of the hearing, the Hearing Officer found the following:

- Rangel was dispensing bed sheets on July 28, 2004

- Rangel refused to accept Plaintiff's sheet because it was torn

- Plaintiff became very agitated by this and began name-calling

- Plaintiff stepped back from the door and then lunged forward while bending at the waist and extending his hands toward the open food port

- When Plaintiff lunged towards the food port, Rangel was standing within approximately one foot of the port

- Upon Plaintiff's movement, Rangel attempted to shut the food port with both hands

---

[1] The charge was changed to "conduct that could lead to violence." (ECF No. 58-7, Def.'s MSJ Ex. A.)

[2] In the Order denying Defendant's Motion to Dismiss, the Court took judicial notice of the RVR log no. 4A2-04-07-14 pursuant to Federal Rule of Evidence 201(d).  (ECF No. 40, p. 4.)

2

- Plaintiff's finger was caught and crushed by the hinge of the port.

(ECF No. 58-7 p. 6; Def.'s MSJ Ex. A.)  Based on this, Plaintiff was found guilty of conduct that could lead to violence, assessed 150 days of credit forfeiture and a 30 day loss of privileges, among other punishments.  (Id. at p. 2.)

The only pertinent disputed fact relates to Plaintiff's conduct during the incident.  Plaintiff alleges that he stood stationary with one hand resting in the open food port and did not lunge at Rangel.  Defendant contends, and the Hearing Officer found, that Plaintiff lunged at Rangel with both hands toward the open food port.

### III.  LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

3

case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of

summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be taken as true, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**IV.   ARGUMENT AND ANALYSIS**

Defendant argues that he is entitled to summary judgment on Plaintiff's claims against him on two grounds: (1) the claims are barred by Edwards v. Balisok, 520 U.S. 641 (1997); and (2) Plaintiff cannot prove each element of his Eighth Amendment excessive force claim. Because the Court concludes that Plaintiff's claims are barred by Edwards, it does not address Defendant's second argument.

In Edwards v. Balisok, the Supreme Court ruled that Heck v. Humphrey, 512 U.S. 477 (1994), applied to actions "challenging the validity of the procedures used to deprive an inmate of good-time credits . . . ." 520 U.S. at 643. Stated another way, a Section 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing Heck, 512 U.S. at 487 n.6). When the Section 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed. See Muhammed v. Close, 540 U.S. 749, 754-55 (2004).

As a result of his disciplinary hearing, Plaintiff was found guilty of conduct that could lead to violence in violation of California Code of Regulations § 3005(c).[3] Section 3005(c) provided, at the time: "Inmates shall not willfully commit or assist another person in the commission of a violent injury to any person or persons, including self mutilation or attempted suicide, nor attempt or threaten the use of force or violence upon another person. Inmates shall not willfully attempt to incite others, either verbally or in writing, or by other deliberate action, to use force or violence upon another person." 15 Cal. Code Regs. § 3005(c) (2004); ECF No. 58-7, p. 6; Def.'s MSJ, Ex. A, p. 5.

Defendant contends that for Plaintiff to succeed on his excessive force claim, the finding of guilt in his prison disciplinary hearing concerning the same incident would have to be invalidated. Defendant states that Plaintiff's version of the incident—that he was not the initial aggressor but only the victim—impermissibly negates the disciplinary finding that he attempted or threatened violence.

---

[3] This section has since been renumbered and amended as § 3005(d)(1) and (2).

6

Plaintiff notes that the Court previously rejected the same Edwards argument in its Order denying Defendant's Motion to Dismiss. (ECF No. 40, p. 6.) In that Order, the Court noted that "Plaintiff may still prevail on his claim even accepting that the institutional hearing officer correctly found that Plaintiff had committed conduct that could lead to violence. For example, it is possible that Plaintiff did swear at Plaintiff and lunge at the door, but Defendant then proceeded to use excessive force by closing the door on Plaintiff's finger. The [C]ourt finds that nothing in Plaintiff's excessive force claim challenges, directly or indirectly, the constitutionality of the disciplinary conviction." (Id.)

At the time the Court made that observation, it was required to accept as true all allegations in Plaintiff's Amended Complaint and was not permitted to consider any other evidence. See Fed. R. Civ. P. 12(b)(6). The case has now progressed beyond that point and is before the Court on Defendant's Motion for Summary Judgment. At this stage in the proceeding, the Court must consider all of the evidence before it. Though it must view that evidence in the light most favorable to Plaintiff, the record has changed significantly since the Court's prior ruling.

On the record before the Court now, it can no longer say that Plaintiff could prevail on his excessive force case without calling in question the validity of the prison disciplinary hearing. The hearing officer specifically found that Plaintiff had lunged forward with his hands outstretched toward the open food port causing Defendant Rangel to shut the port door. To prevail on his excessive force claim in this case, Plaintiff must show that there is a genuine dispute of material fact as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

To meet this standard, Plaintiff has continuously maintained that he was not the initial aggressor.  (ECF Nos. 1, 17, 31, 37, 58-4, 65, & 71.)  In his deposition, Plaintiff denied that he moved forward at all during the verbal confrontation; he maintains that he simply stood at his cell door, never became aggressive toward Defendant, and did not rush toward the open food port.  (ECF No. 58-4, pp. 15 & 24.)  Plaintiff states that while one of his hands was resting in the open food port, Defendant Rangel, without provocation, slammed the port's door closed.

If Plaintiff rushed the food port and aggressively stuck his hands through the port, Defendant's use of force could have been justified as an effort to defend himself and maintain discipline and order.  Such a justification would be inconsistent with the claim that Defendant acted with a purely malicious motive.  Thus, Plaintiff's claim could succeed only if he could prove that his allegations of innocent inaction were true.  However, Plaintiff's claim to that effect directly conflicts with the findings of the hearing officer.  (ECF No. 58-7 p. 6; Def.'s MSJ Ex. A.)  Adoption of  Plaintiff's claim would directly conflict with and undermine the finding of guilt in the disciplinary hearing.  Thus, Plaintiff's claim is barred by Edwards v. Balisok.

Plaintiff argues that the finding of guilt in his disciplinary hearing could be attributed to the verbal confrontation and name-calling by Plaintiff and claims that such an interpretation is consistent with the fact that the hearing officer did not find Plaintiff guilty of attempted battery. However, the above-listed findings by the hearing officer in the RVR rule out that interpretation;  the hearing officer specifically found that Plaintiff had lunged at Defendant.

In his pleadings, declaration, and deposition, Plaintiff repeatedly questions the

8

alleged loss of good time credit asserting that he did not lose any or, if he did, he was not aware of it.  Defendant points out that Plaintiff did lose some credit (though it is difficult to determine the quantity) as demonstrated in both the RVR and Chronological History attached to the Motion.  (ECF No. 58-7.)  Moreover, in the operative Complaint, Plaintiff states "FACT: [Hearing Officer] took my . . . privileges for 90 days and a 150 days los[s] of good time credit . . . ."  (ECF No. 17, Pl.'s Am. Compl. p. 5.)   Thus, Plaintiff acknowledged some loss of good time credit, and is now judicially estopped from claiming otherwise or that he was unaware of the lost credit.[4]

If Plaintiff succeeded in showing that Defendant engaged in excessive force, it would necessarily undermine the prison's disciplinary hearing.  Therefore, Plaintiff cannot proceed on his Section 1983 claims unless and until his disciplinary conviction is invalidated.  Balisok, 520 U.S. at 648-49.

## V.   CONCLUSION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's Motion for Summary Judgment, filed September 10, 2010, be GRANTED.  As such a ruling would dispose of the only claim argued by Plaintiff, the Court further RECOMMENDS that JUDGMENT be entered in favor of Defendant and that the case be CLOSED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within thirty (30) days after being served with these Findings and

---

[4] Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996) (judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position).

Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    March 8, 2011                        /s/ *Michael J. Seng*
                                                            UNITED STATES MAGISTRATE JUDGE